**UNITED STATES of America**

v.

**152 CHAR–NOR MANOR BOULEVARD CHESTERTOWN, MARYLAND.**

**Civil No. L–95–1507.**

United States District Court, D. Maryland.

April 11, 1996.

---

Lynne A. Battaglia, United States Attorney and Richard C. Kay, Assistant United States Attorney, Baltimore, Maryland, for plaintiff.

J. Donald Braden, Baltimore, Maryland, for defendant.

## MEMORANDUM

LEGG, District Judge.

This case involves an asset forfeiture action brought by the United States ("government") against defendant real property located at 152 Char–Nor Manor Boulevard, Chestertown, Maryland ("the property"). In its complaint, the government asserts that the property was used to commit and facilitate the commission of violations of Title 21 of the United States Code, punishable by more than one year, thereby permitting forfeiture to the government pursuant to 21 U.S.C. § 881(a)(7). Bonnie Sue Miller, the owner of the property, filed a claim to the property.

Pending before the Court is the government's Motion for Summary Judgment. Claimant, Ms. Miller, responded to the government's motion and filed a cross motion for summary judgment. For the reasons stated herein, the United States' Motion for Summary Judgment shall be granted by separate order, and Ms. Miller's Cross Motion for Summary Judgment shall be denied.

## I. FACTS

In May 1995, the government instituted forfeiture proceedings against the property, pursuant to section 887(a)(7) of Title 21 of the United States Code. A declaration by Sergeant Joseph Ryan, of the Maryland State Police, supported the complaint. Bonnie Sue Miller, owner of the property, filed a claim to the property and answered the complaint. In her answer, Ms. Miller denied that the United States had probable cause to believe that the defendant property was used to commit a drug felony. She additionally asserted several affirmative defenses, including: double jeopardy in violation of the Fifth Amendment, excessive fine in violation of the Eighth Amendment, estoppel, and a statuto-

ry "innocent owner" defense. The government filed a motion for summary judgment, and Ms. Miller filed a cross motion for summary judgment.

Joseph Ryan's Declaration[1] provides the factual basis for the forfeiture. The Maryland State Police Aerial Marijuana Eradication Unit initially spotted a field of marijuana growing on the property, containing 29 live marijuana plants (up to 18 feet tall), as well as approximately 40 plants that had been pulled. (Decl. at p. 1.) Pursuant to a warrant, the police then searched the property. In the garage, police found six plastic bags full of marijuana, loose marijuana, and a marijuana cigar. (Decl. at p. 2.)

A shed on the property housed an "indoor grow operation" for marijuana. The modified shed included lighting and ventilation systems, insulation, and a lining of silver material to enhance the effects of grow lights. In addition to fertilizer and potting soil, the shed contained 40 small, cloned marijuana plants. (Decl. at p. 2.) A search of the house revealed two sets of scales, two handbooks on growing marijuana, a plastic bag of marijuana, and a legal pad documenting the growth progress of 150 marijuana plants. (Decl. at pp. 2–3.).

In answers to interrogatories, Ms. Miller admitted knowing that her boyfriend, Parris Scott Price, grew marijuana on her property, where they both lived. (Ans. to Interrogs., No. 11.) She additionally condoned his behavior because she allegedly believed that it was for his personal use. (Ans. to Interrogs., No. 11.) She entered a plea of guilty to possession of marijuana in the Circuit Court for Queen Anne's County, Maryland on March 28, 1995. (Ans. to Interrogs., No. 10.) Mr. Price pled guilty to manufacturing a controlled substance in the Circuit Court for Queen Anne's County, Maryland, on May 4, 1995. (Miller's Resp. to Government's Mot. for Summ. J. and Cross Mot. for Summ. J. by Miller ("Miller's Resp."), Ex. 1.)

## II. DISCUSSION

### A. *Summary Judgment Standard*

The Court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The summary judgment inquiry thus scrutinizes the [nonmoving party's] case to determine whether the [nonmoving party] has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993). In deciding a summary judgment motion, the Court shall view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Overstreet v. Kentucky Central Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

■ To apply this standard, the substantive law of asset forfeiture must be analyzed by the Court. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("[T]he inquiry involved in ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply to the trial on the merits."). Initially, the government must show probable cause that the property is subject to forfeiture. *United States v. 7715 Betsy Bruce Lane*, 906 F.2d 110, 111 (4th Cir.1990). Once the government demonstrates probable cause, the burden shifts to the claimant to prove by a preponderance of the evidence either that the property was not unlawfully used or that the claimant has a valid defense. *Id.* "If the claimant cannot produce any such evidence, summary judgment is properly granted to the government based upon a showing of probable cause." *Id.*

---

**1.** In his Declaration, Sergeant Ryan states: "I declare under the penalty of perjury in accordance with 28 U.S.C. 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief." (Decl. at p. 4.)

B. *The Government's Burden: Probable Cause*

The government must demonstrate probable cause to believe that the property is subject to forfeiture because of the property's use to commit a drug felony. *See* 21 U.S.C. § 881(a)(7) (1988); *7715 Betsy Bruce Lane,* 906 F.2d at 111. "Probable cause" in the context of civil forfeiture is the same standard as in search and seizure cases. *United States v. Thomas,* 913 F.2d 1111, 1114 (4th Cir.1990). Probable cause requires only "reasonable grounds for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion." *7715 Betsy Bruce Lane,* 906 F.2d at 112. Additionally, "for the [C]ourt to find probable cause that the house was used or intended to be used to facilitate a crime, the evidence must demonstrate that there was a substantial connection between the property and the underlying criminal activity." *Id.* at 112–113.

The government has satisfied its burden of showing probable cause that the property is subject to forfeiture under 21 U.S.C. § 881(a)(7). The manufacturing of a controlled substance, marijuana, constitutes a drug felony under 21 U.S.C. § 841(a)(1). Mr. Ryan's Declaration provides ample evidence of the cultivation of marijuana on the property. The specially designed shed housing 40 small plants, the 18 foot marijuana plants growing in the yard, the marijuana growers' handbooks, in addition to the notes documenting the growth of 150 marijuana plants, all provide probable cause to believe that the property is subject to forfeiture because of its use to commit a drug felony, the manufacture of marijuana. The extensive and specially adapted use of the property demonstrates a substantial connec-

tion between the property and the underlying criminal activity.

C. *The Claimant's Burden*

Once the government demonstrates probable cause, the burden shifts to the claimant to prove by a preponderance of the evidence either that the property was not unlawfully used or that the claimant can assert an affirmative defense. *7715 Betsy Bruce Lane,* 906 F.2d at 111. "If the claimant cannot produce any such evidence, summary judgment is properly granted to the government based upon a showing of probable cause." *Id.*

Ms. Miller fails to meet her burden of proving that the property was not unlawfully used. The claimed unlawful use forming the basis for the forfeiture is the manufacture of marijuana. In her answers to interrogatories, as well as in her papers before this Court, Ms. Miller has admitted that Mr. Price was growing marijuana on her property. (Ans. to Interrogs., No. 11; Miller's Response at 5; Claimant's Reply at 2.) Additionally, Mr. Price pled guilty to a state charge of manufacturing a controlled dangerous substance, marijuana.[2] The government has shown far more than probable cause to believe that the property was used to commit a felony, the manufacture of marijuana, thereby subjecting the property to forfeiture absent proof of an affirmative defense.

Ms. Miller does, however, raise several affirmative defenses to the forfeiture, including a statutory "innocent owner" defense, violation of the Double Jeopardy Clause of the Fifth Amendment, and violation of the Excessive Fines Clause of the Eighth Amendment.[3]

---

2. Ms. Miller argues that the requisite underlying drug felony did not exist because she believed that Mr. Price had only committed the misdemeanor of possession of marijuana. She contends she believed that Mr. Price grew all of the marijuana for his personal consumption.

 Ms. Miller's argument fails, however, because her knowledge or belief is irrelevant to the objective inquiry concerning whether the property was used unlawfully. Her argument essentially asserts an "innocent owner" defense, and is considered on its merits *infra*.

3. In her Answer, Ms. Miller asserts two additional defenses: lack of probable cause and estoppel. The Court has already addressed probable cause. Ms. Miller does not explain the nature of her estoppel defense in her answer and does not reassert the defense in her response and cross-motion for summary judgment. The Court therefore finds that this defense has been abandoned by the claimant.

### 1. Statutory "Innocent Owner" Defense

First, Ms. Miller asserts an "innocent owner" defense. Under 21 U.S.C. 881(a)(7), although a property may be subject to forfeiture by reason of illegal use, the owner of the property may be spared forfeiture if the illegal activity occurred "without the knowledge or consent of that owner."

 In support of her lack of knowledge, Ms. Miller contends that she believed that Mr. Price grew the marijuana strictly for his personal consumption. Ms. Miller's purported belief, however, is legally irrelevant: 21 U.S.C. § 841(a) prohibits the manufacture of marijuana, regardless of whether that cultivation is for the personal use of the grower or for distribution. *See, e.g., United States v. Leshuk*, 65 F.3d 1105 (4th Cir.1995) (upholding conviction for manufacture of marijuana when cultivation was for personal use). Ms. Miller admitted knowledge that Mr. Price grew marijuana on her property; she therefore cannot assert that she is an innocent owner without knowledge.

 Similarly, Ms. Miller contends that she did not consent to the manufacture of marijuana. In support of this defense, Ms. Miller merely offers that "[t]here is no evidence whatsoever that Ms. Miller expressly consented to anything."[4] (Miller's Response at 5.) Her argument is unavailing. Ms. Miller knew that Mr. Price was growing commercial quantities of marijuana on the property. Nevertheless, aside from occasional nagging,[5] Ms. Miller took no steps whatsoever to stop Mr. Price's cultivation of marijuana. She did not cut down his crop, forbid him to use the property, change the locks on her house, or take any action to curtail the illegal use of her property. A defendant may not assert "lack of consent"

and fall within the innocent owner exception unless she takes affirmative steps to prevent the property's illegal use.[6] In the appropriate case, such steps can demonstrate that a person's property was used contrary to her will. As in the instant case, when a property owner was aware of illegal activity on a daily basis, consent will be inferred unless the owner takes affirmative steps to curtail the unlawful behavior. Because Ms. Miller has failed to demonstrate any effort on her part to curtail the growing of marijuana on her property, the government is entitled to summary judgment in its favor on the innocent owner defense.

### 2. Double Jeopardy Defense

Second, the claimant contends that the forfeiture of her house constitutes double jeopardy in violation of the Fifth Amendment. "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Ms. Miller argues that the administrative forfeiture of her car and her criminal conviction in the Maryland state court system, as prior punishments, preclude the imposition of civil forfeiture against her house in the instant case.

 Ms. Miller's criminal conviction resulted from her violation of a Maryland criminal statute. "Under the dual sovereignty doctrine, federal and state governments may independently prosecute a person for the same conduct." *United States v. Pena*, 67 F.3d 153, 156 (8th Cir.1995) (citing *Heath*

---

4. Ms. Miller's argument misperceives the burden of proof: to assert the innocent owner defense, she must prove, by a preponderance of the evidence, her lack of knowledge or consent. *7715 Betsy Bruce Lane*, 906 F.2d at 111.

5. Ms. Miller averred: "I told Scott I did not like him using marijuana, but my statements would just cause a big argument, and to avoid these arguments, I just stopped talking about his marijuana and stayed away from it." (Claimant's Reply, Aff. ¶ 6.)

6. "Property owners are required to meet a significant burden in proving lack of consent for they must remain accountable for the use of their property: 'Unless an owner with knowledge can prove every action, reasonable under the circumstances, was taken to curtail drug-related activity, consent is inferred and the property is subject to forfeiture.' " *United States v. 5.382 Acres*, 871 F.Supp. 880, 884 (W.D.Va.1994) (quoting *United States v. 418 57th Street*, 922 F.2d 129, 132 (2d Cir.1990)), *aff'd sub nom. United States v. Fisher*, 61 F.3d 901 (1995).

*v. Alabama,* 474 U.S. 82, 89, 106 S.Ct. 433, 437–38, 88 L.Ed.2d 387 (1985)); *see United States v. 38 Whalers Cove Drive,* 954 F.2d 29, 38 (2d Cir.), *cert. denied sub nom. Levin v. United States,* 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). A narrow exception to this doctrine exists: the Double Jeopardy Clause may be violated when one sovereign is simply the "tool" of the other. *Bartkus v. Illinois,* 359 U.S. 121, 123–24, 79 S.Ct. 676, 678–79, 3 L.Ed.2d 684 (1959); *38 Whalers Cove Drive,* 954 F.2d at 38; *United States v. Talley,* 16 F.3d 972, 974 (8th Cir.1994).

■ Federal officials may cooperate with state officials without risking violating the Double Jeopardy Clause; however, prosecution by the federal government may not simply be "a sham and a cover" for a state prosecution. *Bartkus,* 359 U.S. at 123–24, 79 S.Ct. at 678–79; *38 Whalers Cove Drive,* 954 F.2d at 38. To function as merely a sham, "[t]he state government must have effectively manipulated the actions of the federal government, so that federal officials retained little or no independent volition." *38 Whalers Cove Drive,* 954 F.2d at 38. There is no evidence suggesting that state officials have controlled this federal civil forfeiture action. The potential sharing of proceeds, pursuant to 21 U.S.C. 881(e)(1)(A), is insufficient to render this proceeding a sham state proceeding. *See id.* Therefore, under the dual sovereignty doctrine, Ms. Miller's prior state criminal conviction does not cause the instant proceeding to violate the Double Jeopardy Clause.

■ Ms. Miller additionally argues that the civil forfeiture of her house, subsequent to the administrative forfeiture of her car, constitutes multiple punishment in violation of the Double Jeopardy Clause. On December 14, 1994, Ms. Miller received notification that the government had seized her 1979 Pontiac Firebird Trans–Am, pursuant to 21 U.S.C. § 881. (Claimant's Reply to Government's Resp. to Claimant's Mot. for Summ. J. ("Claimant's Reply") at 4; Miller's Response, Ex. 7.) The Notice of Seizure informed Ms. Miller of her options to request remission or mitigation of the forfeiture from the Drug Enforcement Administration or to contest the forfeiture in the United States District

Court. (Miller's Response, Ex. 7.) On December 15, 1994, Ms. Miller filed a petition for remission or mitigation, (Miller's Response, Ex. 8), which was denied in February 1995. (Government's Supplemental Mem. in Supp. of Summary J., Ex. B.)

The issue presented is whether the administrative forfeiture of Ms. Miller's car placed her in jeopardy such that the forfeiture of her house would constitute a second punishment in violation of the Double Jeopardy Clause. "The [United States Supreme] Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (quoting *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971)); *accord United States v. Baird,* 63 F.3d 1213, 1218 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 909, 133 L.Ed.2d 841. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass,* 420 U.S. at 391–92, 95 S.Ct. at 1064; *accord United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994).

■ Ms. Miller choose not to contest the forfeiture of her car in federal district court; rather, she filed an administrative petition for remission or mitigation. A person is not placed in jeopardy, and no punishment is imposed, by an uncontested administrative forfeiture. *United States v. German,* 76 F.3d 315, 319 (10th Cir.1996); *Baird,* 63 F.3d at 1219; *Torres,* 28 F.3d at 1465. A petition for remission or mitigation "does not serve to contest the forfeiture, but rather is a request for executive pardon of the property...." *United States v. Vega,* 72 F.3d 507, 514 (7th Cir.1995), *petition for cert. filed,* Mar. 11, 1996; *United States v. Ruth,* 65 F.3d 599, 604 n. 2 (7th Cir.1995), *petition for cert. filed,* Jan. 19, 1996; *United States v. Wong,* 62 F.3d 1212, 1214 (9th Cir.1995).

By filing a petition (and thereby requesting a pardon) rather than contesting the forfeiture in federal court, Ms. Miller avoided adjudication of her guilt or innocence. *See German,* 76 F.3d at 318; *Wong,* 62 F.3d at 1214. " 'A person who avoids an adjudication of his or her guilt or innocence cannot later claim double jeopardy when the government seeks to obtain such an adjudication in a later proceeding.' " *Id.* (quoting *United States v. Kemmish,* 869 F.Supp. 803, 805 (S.D.Cal.1994)). Ms. Miller "was never placed in jeopardy or 'punished' in any constitutional sense because [s]he was never a party to any proceeding designed to adjudicate [her] personal culpability." *German,* 76 F.3d at 319; *see Wong,* 62 F.3d at 1214. Therefore, because Ms. Miller can establish no former jeopardy, the civil forfeiture of her house is not barred by the Double Jeopardy Clause. *See id.; Baird,* 63 F.3d at 1217; *Torres,* 28 F.3d at 1463. The government is entitled to summary judgment in its favor on the double jeopardy defense.

### 3. *Excessive Fine Defense*

■ Third, Ms. Miller contends that the forfeiture of her house is an excessive fine in violation of the Eighth Amendment. The Supreme Court ruled that civil forfeitures pursuant to 21 U.S.C. § 881(a)(7) constitute "fines" which are subject to the constraints of the Excessive Fines Clause of the Eighth Amendment. *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The Fourth Circuit has articulated a three-part instrumentality test for determining the excessiveness of a forfeiture:

> (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can be readily separated from the remainder. In measuring the strength and extent of the nexus between the property and the offense, a court may take into account the following factors: (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spatial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining, or using the property was to carry out the offense.

*United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995).[7]

The first element examines the nexus between the property and the criminal activity. In the instant case, there is a strong nexus between the property and the crime. First, the use of the property to grow marijuana was deliberate and planned: inside the house were two handbooks describing how to grow marijuana, a specially adapted shed contained cloned marijuana seedlings, larger marijuana plants were growing outdoors, and records of the growth of the plants had been maintained. Second, the property, which provided an indoor, specially adapted location for seedlings, as well as private yard space for larger plants, was important to the success of the grow operation. Third, the spacial use of the property was extensive: marijuana plants were growing in the shed and in the yard, and marijuana was stored in the garage. Fourth, the presence of growing marijuana in various stages, from seedlings to 18 foot plants, suggests the ongoing nature of the manufacturing activity, in sharp contrast to an isolated drug sale. Finally, although it does not appear the property was acquired for the purpose of manufacturing marijuana, the above evidence demonstrates that the property was clearly used and maintained for the manufacture of marijuana.[8]

The second element considers the role and culpability of the owner of the property. Ms.

---

**7.** The *Chandler* Court expressly rejected a proportionality test. 36 F.3d at 365.

**8.** The property's additional use as a residence for Ms. Miller, independent of the marijuana manufacturing purposes, does not cause the forfeiture to fail the nexus requirement of the excessive fine inquiry. *See Chandler,* 36 F.3d at 366 (holding forfeiture of a farm constitutional even though "the farm had substantial purposes other than serving as an instrument of drug activity").

Miller's culpability is less than Mr. Price's degree of guilt; however, she is, by her own admission, culpable. She pled guilty to a charge of possession of marijuana in state court. Additionally, in her interrogatories she admitted her knowledge of Mr. Price's growing activities and she provided him with the land and accompanying structures necessary for the grow operation.

Finally, the Court must consider whether the property is severable. Ms. Miller proposes to move her property line and deed a portion of the property totalling 1280 square feet to her neighbor. She asserts that Mr. Price grew marijuana on only 1280 square feet of the ⅓ acre (15,000 square feet) property.

Ms. Miller's severability argument fails for two reasons. First, the property is too small to be divided and separately sold, creating zoning problems, as Ms. Miller has conceded. (Miller's Resp. at 11.) Second, and perhaps more importantly, there is no practical reason to sever the property because virtually the entire property was used unlawfully. Mr. Price grew marijuana in the yard and in the shed; he stored it in the garage; and he used the house as an office for his operation, keeping reference books and maintaining records there. Therefore, the residence cannot be divorced from the cultivation of the marijuana, and the entire property is subject to forfeiture.

Based upon the foregoing evidence, the Court concludes, "under the totality of the circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense." *Chandler,* 36 F.3d at 365. The government is therefore entitled to summary judgment in its favor on the excessive fine defense.

The government has proven probable cause that the property is subject to forfeiture, and the claimant has failed to prove the existence of an affirmative defense. Accordingly, by separate order, this Court shall grant the government's motion for summary judgment and deny Ms. Miller's motion for summary judgment.