UNITED STATES of America, Plaintiff,

v.

**REAL PROPERTY DESCRIBED IN DEEDS RECORDED AT BOOK/PAGE 639/846, 639/840, 639/834, 639/827, and 610/727 HENDERSON COUNTY REGISTRY AND INSURANCE PROCEEDS, Defendants.**

Civil No. 1:96CV108.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 20, 1997.

James Y. Kerr, John D. Madden, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, for Helena Chemical Co.

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the government's motion for summary judgment forfeiting the Defendant property and certain insurance proceeds. The Claimants oppose such relief in part and move for summary judgment in their favor.

## I. MOTION TO DISMISS CLAIMANTS' COUNTERCLAIMS

On November 13, 1996, this Court granted the government's motion for summary judgment and dismissed the Claimants' counterclaims because they had failed to object to the Magistrate Judges Memorandum and Recommendation. Subsequently, counsel moved for relief from that judgment on the grounds of excusable neglect. By Order entered January 17, 1997, this Court granted that motion and provided counsel for the Claimants an opportunity to file response. In that response, filed January 26, 1997, Claimants do not object to the dismissal of their counterclaims and thus, such relief is granted. In addition, no objection has been raised to the Consent Order involving the Plaintiff, Helena Chemical Company and the North Carolina Department of Revenue. That Order, entered November 13, 1996, therefore is not considered herein.

## II. STATEMENT OF FACTS

In July 1991, Robert Stanley Haynes was indicted on one count of conspiracy to possess with intent to distribute cocaine, four counts of possession with intent to distribute cocaine, and three counts of distributing cocaine. In August of that year, he entered into a plea agreement in which he agreed to plead guilty to conspiracy and four counts of possession with intent to distribute cocaine and agreed to forfeit each of the named parcels. **Complaint for Forfeiture, filed May 9, 1996, at 1.** About three days after Haynes' arrest, the government filed a *lis pendens* against the parcels in question. **Motion for Summary Judgment against**

B. Frederic Williams, Jr., Asst. U.S. Atty., Charlotte, NC, for U.S.

William E. Loose, Asheville, NC, for Betty West, Robert Stanley Haynes, Benjalee Haynes, Jerry Haynes.

the Claims of Jerry Haynes and Betty West, filed October 15, 1996, at 13; Affidavit of Charles Moody, filed February 12, 1997, at 2. In December 1991, Haynes was sentenced to a term of imprisonment of 28 months. Upon his release, he was placed on supervised release, but due to violations of conditions thereof, he is presently incarcerated. **Moody Affidavit, at 2.**

In May 1996 the government brought forfeiture proceedings against the property pursuant to 18 U.S.C. § 981 and 21 U.S.C. § 881. Claims were filed by Robert Stanley Haynes and each of his siblings, Jerry Haynes, Benjalee Haynes, and Betty West. The parties agree that at the time of Haynes' arrest, he was living in a mobile home on the Defendant parcel described as Book/Page 639/840. During depositions, Jerry Haynes and Betty West testified they knew about Roberts arrest and the search of his residence which occurred on June 13, 1991. *Id., at 1.* The parties also agree that Haynes' drug activities operated from that home and indeed, that this parcel is forfeitable.

The remaining Defendants are parcels which are contiguous to Haynes' residence. The Defendant parcels actually encompass an 11–acre farm on portions of which there are apple orchards. *Id., at 1–2.* The property originally belonged to the Claimants' mother who transferred it to them as gifts. The Claimants testified at their depositions that the deeds which divided the farm into separate parcels were created for estate planning purposes. *Id., at 2.* One parcel, Book/Page 610/727, was sold by their mother to family friends, the Pinkstons, who sold the parcel back to Robert in 1981. **Affidavit of Betty West, filed January 26, 1997, at 1.** In 1983, the Claimants transferred their property interests to their brother, Robert, as a gift Thus, at the time of his arrest in June 1991, Robert was the sole owner of each parcel.

At the depositions, the Claimants testified that they did not know where the boundaries of the various parcels lie; however, those boundaries do not follow any natural landmarks or fences. **Moody Affidavit at 2.** Indeed, the boundaries have been ignored and have nothing to do with the functioning of the property as a farm. *Id.* For example,

the use of the land is not prescribed by the parcel boundaries and the farm income is not shared pursuant to ownership or boundaries of the parcels. *Id.*

Claimant Jerry Haynes lives on the parcel described as Book/Page 639/846 in the original Haynes family home. According to counsel for the Claimants, Jerry Haynes "earns his livelihood from the apple orchards" which are "on some of the property." **Response to Plaintiff's Motion for Summary Judgment and Claimants' Cross Motion for Summary Judgment, filed January 27, 1997, at 2.**

Two years after his arrest and conviction, Robert transferred the parcels back to his siblings in violation of the provisions of his plea agreement pursuant to which he agreed to forfeit the parcels to the government. Claimants maintain this was done as part of a settlement agreement with state and federal authorities. The complaint states that a settlement was not reached. However, Claimants maintain the issue of any such settlement does not preclude summary judgment in this action. *Id., at 4.*

In 1991, the mobile home in which Robert had resided was destroyed by fire. An investigation of that fire determined arson was the origin. **Affidavit of Charles Moody *attached to* Complaint at 2.** The government maintains Robert is a suspect of the arson but no charges have been brought *Id., at 3.* The insurer and Robert are involved in civil litigation concerning the fire insurance proceeds. *Id.* Thus, the complaint also names those proceeds as forfeitable funds in the event Robert should collect the same. As part of the plea agreement, Robert also agreed to forfeit such proceeds. **Complaint, at 1.**

### III. STANDING

"[I]n order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *United States v. Real Property Located at 5201 Woodlake Dr.,* 895 F.Supp. 791, 793

(M.D.N.C.1995) (quoting *United States v. $38,000.00 in United States Currency,* 816 F.2d 1538, 1543 (11th Cir.1987)).

> A forfeiture proceeding is not an action against the claimant but rather is an *in rem* action against the seized property brought under the fiction that the property itself is guilty of facilitating the crime. Therefore, although the government bears the initial burden of proving probable cause, it does not bear that burden with respect to a given claimant unless the claimant makes a valid claim that he has a legally cognizable interest in the property that will be injured if the property is forfeited to the government. It is this claim of injury that confers upon the claimant the requisite "case or controversy" standing to contest the forfeiture.

*Id.*

■ Thus, a claimant must come forward with some evidence of ownership; a mere assertion thereof without proof is insufficient to establish standing. *Id.* "Courts generally look to indicia of dominion and control such as possession, title, and financial stake." *U.S. v. $38,570 United States Currency,* 950 F.2d 1108, 1112 (5th Cir.1992).

> Congress has indicated that the "term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." Even one who merely possessed the seized property might qualify as an "owner." But despite its liberal interpretation, "owner" does not encompass those with an undefined interest in the seized property.

*United States v. $3,000 in Cash,* 906 F.Supp. 1061, 1065 (E.D.Va.1995) (citations omitted).

■ At the time of the drug trafficking in question, the only owner of the property was Robert Haynes. There is no dispute by any party that the transfer of the property to him by his siblings was anything other than a gift

It is also undisputed that by the time this forfeiture proceeding was begun, Robert had attempted to transfer the property back to his siblings subject to the *lis pendens* filed by the government. He claims this transfer was made in consideration for a settlement with the state and federal authorities hereby his siblings would pay certain tax penalties in return for the forfeiture of the parcel on which he lived during his criminal activities. Jerry Haynes has continued to live and work on some of the parcels.

Robert agreed in his plea agreement to forfeit the parcels and insurance proceeds. Thus, the government could have initiated an *in personam* forfeiture proceeding against him upon his failure to abide by the terms of his agreement.[1] However, the proceeding at issue is not an *in personam* forfeiture but an *in rem* forfeiture against the property itself Nonetheless, having contracted to forfeit the property in question, Robert has lost any standing to contest the *in rem* forfeiture. *Ragin v. United States,* 893 F.Supp. 570, 575 (W.D.N.C.1995), *aff'd,* 1997 WL 14144 (4th Cir.1997); *see also, Libretti v. United Sates,* —— U.S. ——, 116 S. Ct. 356, 133 L.Ed.2d 271 (1995) (**holding a defendant may waive his right to a jury determination as to the forfeitability of his property by a plea agreement**). The Court thus finds that Robert has no standing to contest the forfeitability of the Defendants.

■ The remaining Claimants took title in 1993 subject to the *lis pendens* of the United States. Thus, the title they obtained was burdened with the same obligations as Robert's title. *Mizell v. Greensboro Jaycees,* 105 N.C.App. 284, 290, 412 S.E.2d 904, 908–09 (1992). Nonetheless, the Claimants have established an ownership interest in the parcels sufficient to establish standing for purposes of a civil forfeiture proceeding. *See, e.g., United States v. Santoro,* 866 F.2d 1538, 1544–45 (4th Cir.1989) (**holding a separation agreement pursuant to which husband**

---

1. Indeed, the government could have moved for specific enforcement of the agreement which may have shortened this litigation. See, *United States v. Attar,* 92 F.3d 1182 (table), 1996 WL 442868 (4th Cir.1996) (judgment granted for the United States in its civil forfeiture proceeding and defendant ordered to specifically perform his

plea agreement in which he agreed to forfeit assets); *United States v. Haselden,* 103 F.3d 121 (table), 1996 WL 721893 (4th Cir.1996) (no error for government to pursue other options, including civil forfeiture, when defendant beaches the terms of his plea agreement).

transferred title to property to wife in exchange for child support payments created an express trust on behalf of the children such that they had standing to contest the forfeiture of the property after their mothers conviction for drug trafficking).

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. **Fed R. Civ. P. 56(c).** A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Both sides agree that disposition of this case by means of summary judgment is appropriate.

■ The United States has an initial burden to show a lack of evidence to support the Claimants' case. *Shaw, supra* (citing Celotex Corp. v. Catrett, *477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). This showing does not require the government to prove the absence of a genuine issue of material fact but only to note its absence.* Holland v. High–Tech Collieries, Inc., *911 F.Supp. 1021, 1025 (N.D.W.Va.1996) (citing* Celotex Corp., supra *). If this showing is made, the burden then shifts to the Claimants who must convince the Court that a triable issue does exist* Shaw, supra *Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [claimants]."* Id. *A "mere scintilla of evidence" is not sufficient to defeat summary judgment.* Id. *The same procedure will be followed in considering the Claimants' cross-motion.*

Thus, in considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Claimants, as the nonmoving parties. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), on remand *In re Japanese Electronic Products Antitrust Litigation,* 807 F.2d 44 (3d Cir.1986), *cert. denied, Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). Then, in considering the Claimants' cross-motion for summary judgment, the same view will be afforded the government.

■ However, in addition to the summary judgment standard, the Court must also consider the shifting burdens inherent in civil forfeiture cases. *Anderson* 477 U.S. at 252, 106 S.Ct. at 2512. The government must show probable cause that the property is forfeitable. *United States v. One Parcel of Real Estate Located at 7715 Betsy Bruce Lane,* 906 F.2d 110, 111 (4th Cir.1990). If that showing is made, the burden then shifts to the Claimants to prove by a preponderance of the evidence that the property either was not unlawfully used or obtained or that the Claimant has a valid defense to forfeiture. *Id.* "If the claimant cannot produce any such evidence, summary judgment is properly granted to the government based upon a showing of probable cause." *Id.*

## V. DISCUSSION

### A. Probable Cause

■ Because the remaining Claimants have established standing, the government must show probable cause to believe the property was used to commit drug crimes or in some manner facilitated those crimes. *United States v. 152 Char–Nor Manor Blvd. Chestertown, Md.,* 922 F.Supp. 1064, 1068 (D.Md.1996). In the context of a civil forfeiture proceeding, probable cause is defined by the same standard as used in search and seizure cases, i.e., "reasonable grounds for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id.* (quoting *7715 Betsy Bruce Lane,* 906 F.2d at 112). The affidavit attached to the *in rem* complaint establishes probable cause to believe the property was used or facilitated drug trafficking.

### B. The shifting burden

Thus, the burden now shifts to the Claimants who must prove by a preponderance of the evidence either that the property was not

unlawfully used or that the owners have affirmative defenses.[2]  *Id.*

The Claimants acknowledge that the parcel known as Book/Page 639/840, Robert's residence, is forfeitable because the drug operation was run from that location.  Thus, this parcel is forfeited to the Plaintiff.

■  However, the forfeitability of that parcel also disposes of the issue of the insurance proceeds.  Because that parcel is forfeited, any insurance proceeds stemming from the fire which destroyed that home would also be forfeitable.  At no point in the Claimants' response is any mention made of the insurance proceeds.  Thus, Claimants have failed to sustain their burden to come forward with evidence showing the government is not entitled to summary judgment on this issue.  The insurance proceeds, should they ever come into existence, are forfeited to the Plaintiff.

■  As to the remaining parcels, Claimants aver they are held in separate deeds with separate tax account numbers despite the fact that each of these tracts is contiguous to that parcel on which Robert lived.  It was not necessary for him to travel across the other parcels in order to reach his home.  **Affidavit of Betty West, at 2; Affidavit of Jerry Haynes.**  Access to the properties is by means of a gravel road.  While Robert did not have to cross the other parcels to reach his home, it appears the other parcels are accessed by the same gravel road which serviced his parcel.  **Affidavit of Robert Haynes,** *at 1-2 ("There is a gravel road/driveway that goes across Deed Book 639 Page 840 that services other defendant properties and other people's properties further off the main access road"); see also, Affidavit of Charles Moody, attached to* **Plaintiff's Response to Motion for Summary Judgment, filed February 12, 1997.**

Betty West averred, "Even if Robert used his mobile home for drug trafficking none of the other property was used that way."  **West Affidavit, at 2.**  Claimant Jerry

Haynes, who lives next to Robert's residence, attested that he did not see Robert's criminal activities "on his property or in his mobile home.  If he ever engaged in drug trafficking, it was not done on the parcels of property outside of his trailer."  **Jerry Haynes Affidavit,** *supra.*  Robert Haynes states simply that the parcel on which his mobile home was located was "the only defendant property where any drugs were kept," a comment which does not address other aspects of drug trafficking which may have implicated the property.  Affidavit of **Robert Hynes, at 1.**  No Claimant attests that he or she was unaware of Robert's criminal activities.

The government maintains the whole 11 acres facilitated the drug trafficking operation

> including the apple orchard with its alleged farming activities, [by] provid[ing] a cover for Haynes' drug trafficking activities, provid[ing] a secluded location for that drug business, reduc[ing] the curiosity that the few neighbors might have about Hynes' activities and the drug related visitors to this location, [making] surveillance by law enforcement officers difficult, and generally facilitat[ing] and ma[king] the drug trafficking business more likely to succeed than if Haynes, his activities, and his control of the use of land had been restricted to the residence and its curtilage.

**Affidavit of Charles Moody, at 1.**

*In United States v. Santoro, supra,* cited by the Claimants in support of their position, the court held that a 26–acre farm divided by a road and taxed as separate parcels was one property for forfeiture purposes.  On one side of the road was a five-acre parcel on which the defendant's house stood along with a barn and other outbuildings.  On the other side of the road was the balance of the property.  In holding the entire property subject to forfeiture, the court noted that although divided by a road, the property was legally described as a single tract.  *Id.,* at

---

**2.**  There is no allegation that the property was obtained with the proceeds of drug trafficking.  The only ground on which forfeiture is sought is that Haynes operated a drug business from the property and that the parcels were either used in

that trafficking or facilitated the same.  While the complaint alleges money laundering activities, no such evidence has been shown in the motion.

1543. Based on this, Claimants maintain the property here should be deemed separate parcels because they are deeded separately.

This argument, however, overlooks the reasoning used by the *Santoro* court; reasoning which actually supports forfeiture here of all the parcels.

[W]hile the terms "use" or "facilitate" can be, and have been, subject to differing interpretations, no reasonable interpretation could conclude that property which was used repeatedly as the situs for illegal cocaine sales was not "used, in any manner or part" to distribute cocaine.... We agree with [claimants] that for property to be forfeitable under 21 U.S.C. § 881(a)(7), there must be a substantial connection between the property and the underlying criminal activity.... This standard is a common sense interpretation of the statute, which is consonant with the congressional intent that the instrumentalities of the drug trade be reached, while ensuring that party only fortuitously connected with drug trafficking be preserve.... While we conclude that there must be a substantial connection between this property and [the drug trafficker's] actions, we find that [the] repeated use of the defendant property as a situs for conducting drug sales establishes this connection and thus, the property was used to facilitate [the] illegal conduct.... Likeise, we reject [claimants'] argument that only the smaller portion of the property, where the cocaine sales actually occurred, can be forfeited. The statute plainly states that, "[a]ll real property, including any right, title, and interest *in the whole of any lot or tract of land* and any appurtenaces or improvements" is forfeitable.... The claimants' subjective characterization of the property as two [or more] tracts cannot serve as the legal basis for determining the number of tracts present for purposes of 21 U.S.C. § 881[].

*Santoro*, 866 F.2d at 1542–43 (emphasis in original) (citations omitted); see also, *United States v. 100 Chadwick Drive of Kings Mountain, N.C.*, 913 F.Supp. 430 (W.D.N.C. 1995) (property forfeitable despite the fact that all drug deliveries were made to a newspaper box not actually located on the property but adjacent thereto); *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road, etc.*, 59 F.3d 974, 986 n. 15 (9th Cir.1995) (noting that property should be treated as one parcel if "it is unreasonable or physically impossible to treat the property separately" and citing for consideration the fact that severing the property would leave one parcel landlocked).

Claimants also cite *United States v. Two Tracts of Real Property with Blds., etc.*, 998 F.2d 204 (4th Cir.1993) in support of their position that parcels on which Robert did not reside are not forfeitable. Again, however, the ease supports forfeiture of all the parcels. In *Two Tracts of Real Property*, the son of a boat works business owner surreptitiously allowed the unloading of marijuana brought in by boat onto his father's business premises. The only way to get from that property to the only main main road leading out of the village was by using a three acre parcel lying between the boat works operation and the main road. At the time of the illegal drug transaction, the father owned both the boat works property and the three acre tract lying between it and the road. However, at an undisclosed time after the criminal conduct but before the son was convicted, the father, who was totally ignorant of his son's offenses, transferred the three acre parcel to his son. The government sought forfeiture of the three acre parcel on the grounds that the son owned it at the time the civil action was begun and that it had a substantial connection with the crime because the marijuana was transported to the main road by truck across the three acre tract.

Noting that at the time of the criminal conduct, the son had no interest in the three acre tract, the Circuit ruled against the government. *Id.*, at 213.

[T]he fact that the guilty party has no legal interest in the property necessarily renders the connection between the land and the underlying criminal activity less "substantial" and more tenuous.... This case would have been quite different, for example, if [the father]—who held both the quasi-dominant and quasi-servient tenements at the time of the crime—had

known of and endorsed his son's bargain with marijuana smugglers, or if [the son's] fee-simple interest in the quasi-servient tenement had come into being before the off-load operation.

*Id.* In the instant case, Robert was the sole owner of all the parcels at the time of the criminal activities. Applying the reasoning of the above court, it is therefore irrelevant that after the conduct creating the substantial connection with drug trafficking, he transferred the property to his siblings, none of whom have denied having knowledge of his drug business.

▮ Moreover, applying the reasoning of the court in *Two Tracts of Real Property,* the issue is whether the other parcels were substantially connected with the drug crime at the time thereof, not later. Substantial connection may be shown by means not directly related to the actual drug transaction, such as the ability of the drug trafficker to conceal his actions by virtue of the location of the property, etc. The *Two Tracts of Real Property* court reiterated its ruling in a prior case, *United States v. Schifferli,* 895 F.2d 987 (4th Cir.1990).

> It ... irrelevant whether the property's role in the crime is integral, essential or indispensable. The term "facilitate" implies that the property need only make the prohibited conduct "less difficult or more or less free from obstruction or hindrance." ... In that case we noted that the dentist's office provided an air of legitimacy and protection from outside scrutiny for Dr. Schifferli's illegal prescription-writing, precisely because a dentist's office is where prescriptions often are written.

*Two Tracts of Real Property,* 998 F.2d at 211–12 (quoting *Schifferli,* 895 F.2d at 990); see also, *100 Chadwick Drive,* 913 F.Supp. at 437 (noting the drug dealer's "clandestine" efforts to keep his residence secret were aided by using a newspaper box adjacent to the property as the drug drop-off point). Here, the government has shown that the location of the property provided a "clandestine" backdrop to Robert's drug trafficking activities.

As noted above, upon the showing of probable cause,

the burden shift[ed] to the claimant[s] to show by a preponderance of the evidence that he or she owned the defendant property and the property was neither used nor intended to be used unlawfully.... [O]nce the Government has made a showing of probable cause, the burden shifts to the claimant who cannot rest on mere allegations or denial but must come forward with specific facts showing that there is not a substantial connection between property at issue and the criminal activity outlined in the Government's complaint.... And while the Court is obliged to draw reasonable inferences in favor of the nonmoving party, those inferences must be reasonable in light of competing inferences to the contrary.

*100 Chadwick Drive,* 913 F.Supp. at 436 (citations omitted); see also, *United States v. All Right, Title, Interest in Real Property, etc.,* 77 F.3d 648, 658 (2d Cir.), *cert. denied,* ── U.S. ──, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996).

Claimants have not shown by a preponderance of the evidence that the property was not used or did not facilitate drug trafficking crimes. Their affidavits amount to "mere allegations" and general denials. Despite Jerry Haynes' statement that he could see his brothers trailer from his home, he has not come forward with specific facts showing there was no use of the parcels to facilitate drug trafficking. The most any Claimant has shown is a bare assertion that if their brother was involved in drug trafficking, it did not implicate any parcel except that on which he resided. Nothing has refuted the government's contention that although deeded separately, the farm always operated as one tract. Indeed, the Claimants testified that the separate deeds were effected by their mother as an estate planning mechanism. Claimants have not established by a preponderance of the evidence that the parcels are not forfeitable. Since the Claimants' have failed to rebut the showing of probable cause, that showing is sufficient to support forfeiture. *United States v. B & M Used Cars,* 860 F.2d 121, 125 (4th Cir.1988). Moreover, the Claimants have failed to carry their burden on summary judgment to show

they are entitled to ownership of the parcels as a matter of law. *All Right, Title, Interest in Real Property, etc., supra.*

## VI.  ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion to dismiss Claimants' counterclaims is **ALLOWED** and the same are hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the Claimants' motion for summary judgment is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Plaintiff's motion for summary judgment is hereby **GRANTED** and the Defendant Real Properties are hereby forfeited.

The Plaintiff is instructed to prepare an appropriate judgment of forfeiture forthwith.